**Date signed May 25, 2004**



JOHN C. AKARD
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Martin Baltrotsky, | * | Case No. | 98-20642 PM |
| | * | Chapter | 7 |
| | * | | |
| Debtor. | * | | |
| ************************************** | * | | |
| | * | | |
| Martin Baltrotsky, | * | Adv. No. | 03-01482 |
| | * | | |
| | * | | |
| Plaintiff, | * | | |
| vs. | * | | |
| KH Funding Inc., | * | | |
| | * | | |
| | * | | |
| Defendant. | * | | |
| ************************************** | * | | |

### MEMORANDUM OF DECISION

This adversary proceeding was commenced by a *pro se* complaint filed by Plaintiff

Martin Baltrotsky (the Debtor) on December 19, 2003 entitled Complaint to Void Foreclosure

and Post[-]Petition Transfers.  A hearing on Defendant KH Funding, Inc.'s (KH) Motion to

Dismiss Complaint to Avoid Foreclosure and Post-Petition Transfer and for Summary Judgment was held on May 3, 2004. The court finds that KH is entitled to summary judgment.[1]

<u>Facts</u>

On August 11, 1998 the Debtor commenced his Bankruptcy case by filing a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. At the time he filed that petition, the Debtor owned improved real property, including 1801 Arcola Avenue, Silver Spring, Maryland, 5100 Bradley Boulevard, Bethesda, Maryland and 9110 Georgia Avenue, Silver Spring, Maryland (The Properties). On June 4, 2001, the Debtor secured a loan for $650,000 from KH to refinance existing liens on The Properties. The Debtor did not secure the advance approval of the court for that loan as required by § 364(c)(2)[2] of the Bankruptcy Code. The note was to mature on December 18, 2001 but by agreement of the parties (again without court approval), the maturity date was extended to July 1, 2002. The Debtor has made no payments on the loan since May 2002.

Apparently the Debtor was not making satisfactory progress toward reorganization in the Chapter 11 case, so the United States Trustee moved to convert the case to a Chapter 7 or to dismiss the case. After appropriate notice and hearing, the court converted the case to Chapter 7 on July 26, 2002. Steven H. Greenfeld was appointed the Chapter 7 Trustee (the Trustee).

---

[1] This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and Local Rule 402 of the United States District Court for the District of Maryland, referring all cases under Title 11 of the United States Code to the Bankruptcy Judges of this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

[2] The Bankruptcy Code is 11 U.S.C. §10l *et. seq.* References to sections are references to the Bankruptcy Code unless otherwise specified.

On April 23, 2003, the Trustee filed an adversary proceeding, No. 03-3002, to set aside the liens which KH received in connection with the loan made to the Debtor during the Chapter 11 case.  Various causes of action were alleged in that adversary proceeding by the Trustee.  All matters between the Trustee and KH were resolved in a "Stipulation and Consent Order (i) Compromising and Settling all Disputes at Issue in Adversary Proceeding; and (ii) Granting Relief from the Automatic Stay" (Consent Order - docket item 14 in Adversary Proceeding 03-3002).  The Consent Order was signed by the parties on September 15, 2003.  On that date, notice of the proposed order was served on the Debtor[3] and other creditors and parties-in-interest with a deadline for filing objections to it.  No objections were filed.  On October 9, 2003, the Consent Order was approved by the court.  A copy of the Consent Order is attached to this memorandum.

The opening paragraph of the Consent Order makes it clear that the agreement which is being presented to the court for approval is between the Trustee and KH.  The signature page has the notation: "SEEN AND CONSENTED TO:" followed by the signature of the Debtor.  The apparent reason for the Debtor's signature to the Consent Order was to inform him of rights given to him in the Consent Order, which are not normally afforded debtors in Bankruptcy cases.

---

[3]  In an affidavit attached to Plaintiff's Second Supplemental Opposition to Dismissal or Judgment (docket item 41), the Debtor asserted that he did not get this notice because it was addressed to the wrong city and zip code.  The address, city and zip code used in the notice were the ones shown on the court's docket in the Debtor's Bankruptcy case, shown as his address in this Adversary Proceeding, and shown on the detailed description of the properties attached to the Consent Order.  The Debtor acknowledges that the Consent Order was reviewed and signed by him before it was presented to the court.  He was not injured by the alleged improper notice. The petition which the Debtor filed originally commencing this case had a different address, so it appears that the Debtor has moved during this case.

On page 2 the Consent Order specifically ratified KH's liens *nunc pro tunc* to the date of the loan and relieved KH from the automatic stay of § 362 of the Bankruptcy Code so that it might foreclose its liens.  On page 4, KH agreed to forbear foreclosing on The Properties:

> until **the later of** (i) the date on which the Court enters this Stipulation and Consent Order; or (ii) the sixtieth (60th) day following the date of this Stipulation and Consent Order (the 'Forbearance Period'); . . (emphasis added).

During the Forbearance Period the Debtor was given the opportunity to secure financing to replace KH's lien.  In order to do this, page 5 provides that:

> the Debtor shall **disclose all of the material terms of such financing commitment** to KH Funding, in writing to KH Funding's undersigned counsel at least two weeks prior to the closing date, and KH Funding shall have the right to extend replacement financing to the Debtor pursuant to the same or better terms, . . . (emphasis added).

The Debtor did not give any notice of refinancing in accordance with the Consent Order, either within the time limits specified in the Consent Order or at any time prior to the foreclosure on The Properties.

The foreclosure was set for December 24, 2003.  On December 22, 2004, the Debtor, in an attempt to stop the foreclosure, filed a case under Chapter 13 of the Bankruptcy Code.  On December 23, 2004, Judge Keir consolidated that case with the Debtor's still pending case under Chapter 7.  The foreclosure sale was conducted and resulted in bids by third parties which exceeded the debt to KH.  However, because of the Debtor's actions, those sales have not closed and interest continues to accrue on the debt to KH.

On December 19, 2003, the Debtor filed this adversary proceeding *pro se*.  His complaint basically copies the Trustee's Complaint in the adversary proceeding which was resolved by the Consent Order and adds some objections to the foreclosure.

-4-

On February 6, 2004, KH filed this motion to dismiss and for summary judgment (docket item 6[4]), which was set for hearing on February 26, 2004, the same time as the Pre-Trial Conference.  The Debtor filed a document titled: "Amendment to Complaint 03-1482 to Void Transfer of Property," on February 12, 2004.  Thereafter, on February 26, 2004, attorney Roger A. Morrison entered his appearance on behalf of the Debtor, filing a Motion for Continuance and Discovery by New Counsel at the same time.  At the February 26, 2004 hearing on KH's motion, the court continued the hearing to April 28, 2004. Subsequently the hearing was continued to May 3, 2004.

On March 4, 2004, Judge Mannes issued a Memorandum to the Parties (docket item 16) in which he stated:

> While it is difficult to understand the cause of action that the Debtor seeks to set out in his own papers, this court will follow the instructions of the Fourth Circuit that *pro se* complaints should not be dismissed summarily, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. (citation omitted)  Having said that, the court notes that counsel will not be entitled to the same leniency.

Judge Mannes further stated that he expected counsel to file a second amended complaint and granted permission to do so if it was filed promptly.  The Second Amended Complaint was filed on March 22, 2004 (docket item 20).

---

[4]References to docket items are to the docket in this Adversary Proceeding unless otherwise specified.

Mr. Morrison did not file any response to KH's motion to dismiss and for summary judgment until the afternoon of Friday, April 30, 2004.  Apparently he did not deliver a copy of that response to KH's attorneys until just before the hearing on May 3, 2004.[5]

At the conclusion of the May 3, 2004 hearing, the court stated that it would announce its decision at 10:30 a.m. on the next day.  Later that day, Mr. Morrison submitted to the court items which brought into question whether the Trustee had abandoned The Property.  In spite of the late filing of that material, the court decided to allow additional submissions so its decision would be correct. Those additional submissions have been received and reviewed by the court.

Standards for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883-84 (1990); Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 817 (4th Cir. 1995).  In considering a motion

---

[5]Local Bankruptcy Rule 9013-1(3) provides that "Any responsive pleading and memorandum in opposition to a motion must be filed within fourteen (14) days from the date of service of said motion."  KH's motion was filed and noticed on February 6, 2004.  Mr. Morrison entered his appearance on February 26, 2004.  Mr. Morrison filed the opposition to the motion on April 30, 2004, which was the Friday before the Monday hearing (and 64 days after his entry of appearance in this case).  He did not furnish a copy to opposing counsel until the hearing was about to begin.  KH's counsel asked the court to exclude Mr. Morrison's opposition.  Although upset with Mr. Morrison's dilatory tactics, the court decided that, in the interest of justice, it should consider Mr. Morrison's opposition.  Although the hearing on KH's motion was noticed well in advance of the hearing date, Rule 56(c) of the Federal Rules of Civil Procedure provides that only 10 days notice is required for a hearing on a motion for summary judgment and that opposing affidavits may be served prior to the day of the hearing.  That rule is made applicable to adversary proceedings in Bankruptcy cases by Rule 7056 and to contested matters by Rule 9014(c)of the Federal Rules of Bankruptcy Procedure.

for summary judgment the court must view all permissible inferences in a light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Summary judgment is appropriate only if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the non-moving party. <u>Matsushita</u>, 475 U.S. at 587; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

"In order to prevail on a motion for summary judgment, the moving party must establish the absence of genuine issues of material fact and that he or she is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). If the moving party carries its burden, the nonmoving party may not rest on the allegations in his or her pleading, but must produce sufficient evidence that demonstrates that a genuine issue exists for trial. <u>Id</u>. at 324." <u>Young v. Fed. Deposit Ins. Corp.</u>, 103 F.3d 1180, 1186 (4th Cir. 1997).

Affidavits in support of or in opposition to motions for summary judgment must be based on "personal knowledge." FED. R. CIV. P. 56(e); <u>see</u> <u>Evans v. Tech. Applications & Serv. Co.</u>, 80 F.3d 954 (4th Cir. 1996). An affidavit supporting a summary judgment motion that is based upon "information, knowledge, and belief" is insufficient and shall be disregarded. <u>See Ramsey v. Bernstein (In re Bernstein)</u>, 197 B.R. 475 (Bankr. D. Md. 1996); <u>accord</u> <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988).

<u>Discussion</u>

*A. In General*

The issues raised in this Adversary Proceeding are resolved by sections of the Bankruptcy Code. Section 541(a)(1) provides that the commencement of a case creates an estate which is "composed of all legal or equitable interests of the Debtor in property as of the

commencement of the case" wherever located and by whomever held.  When the Debtor filed his voluntary petition for a reorganization under Chapter 11 of the Bankruptcy Code, an estate was created and he became a "debtor in possession" under § 1101(1) and had the rights of a trustee in Bankruptcy under § 1107.  When the case was converted to a liquidation under Chapter 7, the Debtor was no longer a debtor in possession and no longer had the rights of a trustee.  The estate passed to the interim trustee appointed under § 701(a)(1).  Since the creditors did not elect a trustee, the interim trustee became the trustee in the case pursuant to § 702(d).  The Duties of the Trustee are set out in § 704.  Those duties include a requirement that the trustee "collect and reduce to money the property of the estate for which the trustee serves" § 704(1).

As a result of the foregoing statutes, when the case was converted to Chapter 7, the Debtor had no claim to, and no control over, any of the property of the Bankruptcy estate.  Specifically, he had no claim to, and no control over, any of The Properties in dispute in this Adversary Proceeding.

Mr. Morrison argued that the filing of a Chapter 13 petition by the Debtor on December 22, 2003 had the effect of placing an automatic stay on The Properties and preventing the foreclosure sale on December 24, 2003.  The only assets which would be affected by the Debtor's Chapter 13 filing would be assets which he owned at that time.  Since he did not own the assets of the Chapter 7 estate, there was no automatic stay with respect to the foreclosure on The Properties created by his Chapter 13 filing.

Mr. Morrison argued that the Debtor had "residual equity" in The Properties which gave him some ownership interest.  He sights no authority for that proposition.  As noted above, the estate created by the filing of the petition includes all of a debtor's "legal and equitable" interests

in property § 541(a)(1).  The Chapter 7 trustee is instructed to "reduce to money the property of the estate." § 704.  After that is done the trustee is to distribute the money to the creditors in the order of priority established in § 726(a).  Only after all of the expenses of the case and all of the creditors have been paid in full, with interest, is any money to be distributed to the debtor. § 726(a)(6).

Mr. Morrison inferred (without offering any proof) that the sale of The Properties would produce sufficient funds to pay all of the expenses and creditors in full and leave something over for the Debtor.  The proceeds from KH's foreclosure sale are required to be used to first pay the Trustee the $25,000 due to the Trustee under the terms of the Consent Order, second the expenses of the sale, third to all amounts due to KH under its loan documents, fourth to any subordinate liens and taxes due on the property in the order of their priority, and lastly any surplus to the Trustee for the benefit of the Bankruptcy estate.  Even if Mr. Morrison's inference was true, it would not give the Debtor any control over, or any ownership interest in, The Properties because it is the duty of the Trustee to reduce The Properties to money.

B. *Suggestion of Abandonment*

Contrary to the Debtor's assertions, his alleged economic stake in the Properties does not confer standing on him; rather, at most, any such economic stake indicates that the Debtor may be a party in interest.  "As a general matter, in a Chapter 7 proceeding, the trustee alone has standing to raise issues before the bankruptcy court and to prosecute appeals."  Matter of Richman, 104 F.3d 654, 657 (4th Cir. 1997).  Although a debtor in a Chapter 7 bankruptcy case may be a party in interest, that status does not equate to standing to prosecute causes of action that belong to the bankruptcy estate.  Id. at 657-658.

-9-

Attached to the letter submitted by Mr. Morrison to the court on the afternoon of May 3, 2004 (docket item 33) was a copy of Judge Mannes' November 7, 2002 Order Approving Compromise in the Debtor's Bankruptcy case (case docket item 452, entered on November 8, 2002).  The order authorized the trustee to abandon The Properties in exchange for $100,000.  Property can be abandoned pursuant to § 554.[6]  Upon abandonment, title to the abandoned property reverts in the debtor.  In re Dewsnup, 908 F.2d 588, 590 (10th Cir. 1990). Although the docket in the Bankruptcy case did not reflect that the Trustee had abandoned The Property, the court was concerned that he might have done so.  Consequently, the court allowed the parties additional time to file summary judgment evidence.  By a letter filed on May 4, 2004 (docket item 34), Mr. Morrison told the court that the Trustee had not abandoned The Properties but asserted that the Trustee still might do so.  Unless and until The Properties are abandoned pursuant to § 554, title remains in the Bankruptcy estate and the Debtor has no interest in them and no rights to exercise any dominion or control over them.  The fact that there is the potential of an abandonment, gives the Debtor **no** rights with respect to The Properties.  When KH foreclosed on The Properties, title passed to the purchasers at the sales and thus there is nothing left for the trustee to abandon.

*C.  The Debtor's Discharge*

In response to Mr. Morrison's May 3, 2004 letter and the court's order allowing the parties additional time to file summary judgment evidence, KH filed a supplement to its motion to dismiss (docket item 38) (Supplement).  Attached to the Supplement was a copy of the

---

[6]In general Chapters 1, 3, and 5 [section numbers in the 100's, 300's, and 500's] apply to all Bankruptcy cases and Chapters 7, 9, 11, 12, and 13 apply only to cases pending under the particular Chapter. § 103.

Trustee's Motion for Approval of Compromise of Claim (case docket item 436) (Motion) which was filed September 3, 2002 [a few months after the conversion to Chapter 7 and approximately a year before the compromise with KH]. In the Motion, the Trustee stated that the Debtor has "apparently received" a loan commitment for the refinancing of The Properties in an amount sufficient to pay off KH and provide the sum of $100,000 to the Bankruptcy estate. In exchange for that sum, the Trustee agreed to abandon The Properties. The Motion detailed the reasons the Trustee felt the settlement was in the best interest of the Bankruptcy estate. It further stated: "The closing on the refinancing shall take place no later than thirty (30) days from the entry of an Order approving this proposed compromise. If the Debtor is unable to consummate the closing within that time period, the Trustee shall be free to commence to market the Properties for sale." A copy of the Motion was sent to the Debtor. Almost identical language is contained in the Notice of Intent to Compromise and Settle Claim (case docket item 437), which was sent to all creditors and parties in interest, including the Debtor. As noted above, the Order Approving Compromise was entered November 8, 2002 (case docket item 452). In an affidavit which is Exhibit 3 to the Supplement, the Trustee states that the refinancing described to him by the Debtor never closed and the estate never received the $100,000 or any other amount from the Debtor. He states: "I never caused the bankruptcy estate's interest in the Properties to be abandoned. ... At no time did I convey to the Debtor any equitable or other rights in the Properties. I never expressly or impliedly granted the Debtor standing to raise or prosecute any cause of action belonging to the bankruptcy estate." The Debtor has not disputed the Trustee's affidavit.

-11-

During the May 3, 2004 hearing, Mr. Morrison argued that the Debtor had been "dismissed" from his Bankruptcy case and implied that action, in some unexplained way, gave the Debtor some rights with respect to The Properties. Upon proper notice and hearing and upon proper grounds, Bankruptcy cases can be dismissed but Debtors are **not** dismissed from their cases. In the letter filed on the afternoon of May 3, 2004 (docket item 33), Mr. Morrison clarified that he was referring to the Debtor's discharge which was granted on March 21, 2003 (case docket item 472). The effect of discharge is described in § 524. Nowhere in that section, nor elsewhere in the Bankruptcy Code, is there any indication that the granting of a discharge gives the debtor any interest in property of the Bankruptcy estate. Thus, the fact that the Debtor received a discharge does not give him any rights in, or control over, The Properties.

*D.  2nd Amended Complaint*

The Debtor's operative pleading is his "2nd Amended Complaint to Void Foreclosure & Post[-]Petition Transfers" filed on March 22, 2004 by attachment to his "Motion for Leave to File 2nd Amended Complaint" (docket item 20). Permission to file the 2nd Amended Complaint was granted by order dated March 30, 2004 (docket item 21). For clarity, the court will review the allegations in that Complaint.

The "General Allegations" (paragraphs 3 - 10 of the 2nd Amended Complaint) basically recite background facts concerning the Debtor's Bankruptcy case. Included is a statement that attorney Scott Borison represented the Debtor. That matter will be discussed below in connection with the Debtor's opposition filed on April 30, 2004 (docket item 31).

The "First Adversary Action Settled with Debtor Signing Undated Document" (paragraphs 11 - 17) describes the Adversary Proceeding filed by the Trustee and the settlement

of it.  The Debtor acknowledges that the settlement embodied in the Consent Order was between the Trustee and KH, yet, he objects that he was not consulted during the negotiations and asserts that it was not dated when he signed it.  The Debtor was not a party to the Adversary Proceeding and thus not a party to the settlement.  However, the parties to the agreement, for reasons which are not apparent on the record, gave him something to which he was not entitled - namely, a limited right to secure refinancing of The Properties.  The Debtor objects to some of the terms of his right to secure refinancing, but since he had nothing prior to that right being granted to him, he must take it on the terms given.  There is no indication that the Debtor paid any consideration for that right.  If the Consent Order was not dated at the time he signed it, that fact does not change the result.

Stating "Consent Order is Ratified and Filed without Notice to Debtor" (paragraphs 18 - 19) the Debtor asserts: "On information and belief, the Consent Order, as filed, was not served on Debtor."  A certificate of service dated September 15, 2003 (docket item 12 in Adversary Proceeding 03-3002) shows that the Application to Compromise Controversy and an opportunity to object to its approval were served on the Debtor.  Although the Consent Order called for a copy to be sent to the Debtor, the certificate of service generated by BNC indicates that he was not sent a copy of the signed order (docket item 15 in Adversary Proceeding 03-3002).  **The Debtor did not file an objection to the entry of the Consent Order nor did he file an appeal from that order.**

Under the heading "Debtor Offers Refinancing and KH Declines" (paragraphs 20 - 25) the Debtor describes various attempts to refinance the property commencing October 31, 2003 and continuing into December 2003.  As described on page 4 of the Consent Order, the

-13-

Forbearance Period extended "until the later of (i) the date on which the Court enters this Stipulation and Consent Order; or (ii) the sixtieth (60th) day following the date of this Stipulation and Consent Order[.]"  The order was signed October 9, 2003 so the Forbearance Period expired on the 60th day after September 15, 2003, being November 14, 2003.  The closing had to occur during the Forbearance Period and the material terms of the financing were required to be disclosed to KH at least two weeks prior to closing.  Thus the Debtor's efforts to secure financing basically occurred after the expiration of the Forbearance Period. Since the Debtor had no right to refinance in the first place, his protestations that the terms of the Forbearance Period were not generous enough, carry no weight.

At the May 3, 2004 hearing, Mr. Morrison argued that the Forbearance Period should run from the date the court approved the Consent Order and that the terms are confusing so they should be construed against KH because its attorneys drafted the order.  The terms were quite clear, so if the Debtor wanted to take advantage of them, he had to do so according to the terms. Mr. Morrison also argued that the Consent Order did not specify that "time is of the essence," so the Debtor's belated attempts to refinance should be allowed.  The "time is of the essence" theory has some applications in contract law, but it has no place in court orders.  It is clearly understood that deadlines specified in court orders are firm; not just estimates.

Complaining that "Debtor Files Chapter 13 with Stay; Yet Foreclosure Auction Anyway" (paragraphs 26 - 35) and under the heading "First Count - Tortious Violation of Chapter 13 Stay" (paragraphs 1 - 4 on page 3), the Debtor asserts that his December 22, 2003 filing of a Chapter 13 case should have stopped KH's foreclosure on The Properties.  As noted above, the Chapter 13 case only concerned the property the Debtor owned at the time he filed the Chapter 13.  At

-14-

that time, he owned no interest in The Properties.  Therefore, there was no violation of the

automatic stay by KH proceeding with the foreclosure on The Properties.

In "Second Count - Duress & Recission of Consent Order" (paragraphs 1 - 6 on page 3),

the Debtor asserts that his signature to the Consent Order was secured under duress by the

attorney for the Trustee, Scott Borison.  Although the affidavit of Mr. Borison (docket item 9)

casts doubt on that claim, the court must assume that it is true for the purposes of the present

motion.  Was the Debtor injured by the duress?  The answer is **no.**  The Debtor was not a party to

the Trustee's suit against KH nor was he a party to the Consent Order.  The Debtor had no title

to The Properties because title was in the Chapter 7 Bankruptcy estate.  Prior to the Consent

Order the Debtor had no rights to seek refinancing of KH's liens on The Properties.  The Debtor

had no right to negotiate any of the terms of the right to refinance; that right was simply given to

him by the parties to the Consent Order.  Any refinancing would have required the approval of

the Bankruptcy court under § 364(c) or (d) and any amounts received over and above the

amounts necessary to pay off KH would be paid to the Trustee as property of the Bankruptcy

estate.  There would be only two possible benefits to the Debtor of this arrangement:

(1) To refinance for an amount large enough to pay in full all expenses of his Bankruptcy
case, then pay all creditors in full, with interest, and leave a surplus for him under § 726(a)(6); or

(2) To refinance for an amount large enough to pay KH in full with the hope of later
selling  The Properties in an amount large enough to pay in full all expenses of his Bankruptcy
case, then pay all creditors in full, with interest, and leave a surplus for him under § 726(a)(6).

Thus, assuming that the Debtor's signature was secured by duress, such duress is not a ground

for setting aside the Consent Order.

In "Third Count - Breach of Consent Order" (paragraphs 1 - 8 on pages 3 - 4), the Debtor

again asserts that the Forbearance Period ran for 60 days after the entry of the court's order on

-15-

October 9, 2003, he objects to provisions of the refinancing terms contained in the order, and asserts that he had no voice in drafting the Consent Order. The terms of the Consent Order are clear and the Debtor's efforts to unilaterally change them will not be permitted. Again, he was not a party to the Consent Order and thus got only the limited rights it gave him.

In his "Fourth Count - Avoidance of Post-Petition Transfer & Foreclosure" (paragraphs 1 - 5 on page 4), the Debtor asserts the grounds stated by the Trustee in his Adversary Proceeding against KH. While acknowledging that an avoidance action under § 549 must be brought by a Trustee, the Debtor non-the-less seeks to set aside KH's lien. That lien was ratified in the Consent Order. The matter has been decided and cannot be raised again by the Debtor. He has no standing to seek such relief.

The Debtor's "Fifth Count - Violation of the Truth in Lending Act" (paragraphs 1 - 8 on pages 4 and 5) seeks to raise issues in connection with his original loan from KH. Any such claims became the property of the Trustee when the Debtor's case was converted to Chapter 7 and were resolved in the Consent Order. Thus the Debtor has no standing to raise them.

The Debtor's "Sixth Count - Violation of Home Ownership Equity Protection Act" (paragraphs 1 - 9 on page 5) asserts certain interest rate violations by KH. He does not allege which, if any, of The Properties constitute his home. Any such claims became the property of the Trustee when the Debtor's case was converted to Chapter 7 and were resolved in the Consent Order. Thus the Debtor has no standing to raise them. Further, the Debtor's schedules, filed August 11, 1998, listed his address as 6513 Danville Court, Rockville, Maryland. Schedule A shows that the Debtor owned 15 parcels of real property. All three of the properties comprising The Properties are listed on Schedule G as being subject to existing leases. Consequently, it is

doubtful that any of The Properties constituted the Debtor's homestead when he borrowed from KH in June 2001.

   *E.  Plaintiff [sic] Opposition to Dismissal or Summary Judgment*

   On Friday, April 30, 2004, Mr. Morrison, on behalf of the Debtor, filed his "Plaintiff(sic) Opposition to Dismissal or Summary Judgment" (docket item 31) (the Opposition).  He did not deliver a copy of his Opposition to opposing counsel until just before the May 3, 2004 hearing.  The opening paragraphs state conclusions which are discussed more fully in the counts.  The court will review each of the counts.

   "Count I - Chapter 13 Stayed Foreclosure, Preserving Baltrotsky Claims" asserts that once the Debtor got his Chapter 7 discharge[7] he held title, possession, rents and equity in The Properties.  As noted above, that is not the case.  Title to The Properties remained in the Chapter 7 estate and The Properties were in no way affected by the Debtor's filing a Chapter 13 case.

   "Count II - Undue Influence Warrants Vacating the Consent Order" is basically the same argument made earlier under the claim of duress.  For the same reasons, the argument of undue influence cannot be used to set aside the Consent Order.

   In Count II and in some of the prior pleadings, the Debtor asserts that Scott Borison was his attorney and acted adversely to the Debtor's interest.  Mr. Morrison is the fourth attorney to represent the Debtor in his Bankruptcy Case.  At the time the petition was filed, the Debtor was represented by Laura J. Marguiles who was terminated as his attorney on August 25, 1999.  James M. Greenan was terminated on February 21, 2001 and Charles Alfred Docter was

---

   [7]The Opposition uses the phrase  "dismissal from Chapter 7." As noted above a debtor is not dismissed from a case.  In docket item 33, Mr. Morrison clarified that he was referring to the Debtor's Chapter 7 discharge.

-17-

terminated August 17, 2001.  From that time until the entry of Mr. Morrison, the Debtor

represented himself *pro se*.  There is **no** entry of appearance by Mr. Borison or any member of

the firm with which he is associated, The Legg Law Firm, as attorney for the Debtor.  Attached

to the Opposition are several exhibits:

- Exhibit B-1 a copy of a check payable to Mr. Borison dated August 5, 2002 for $750.00 with a handwritten note signed by the Debtor dated August 5, 2002 stating: "Dear Scott, Thanks for being my attorney in my Chapter 7.  I sincerely appreciate your representation.  Enclosed [is] my retainer check for $750.**""

- Exhibit B-2 is a letter dated August 6, 2002 from Michelle Grimes of the Legg Law Firm, LLC to the Debtor asking him to sign and return the enclosed fee agreement and to send her the completed Bankruptcy petition Debtor filed with the court.  She notes that this is needed prior to an August 27, 2002 hearing.

- Exhibit B-3 is a copy of a facsimile from the Debtor to Mr. Borison dated 11/12/03 stating: "Dear Scott, I received my commitment letter today.  They can settle by the end of this month.  Appraisals ordered.  Tax returns available. Thanks for all the help.  Sincerely[,] Martin Baltrotsky[.]"

- Exhibit B-4 is a letter dated December 29, 2003 from the Legg Law Firm, LLC to the Debtor stating that his Chapter 13 number 03-20714 had been filed December 22, 2003 and giving him instructions for the meeting of creditors and the confirmation hearing.

Exhibit B-4 is interesting because the petition filed in case number 03-20714 was

handwritten and signed by the Debtor.  A large "X" was drawn through the portion of the

petition that called for information about the Debtor's attorney.

Exhibits B-1 and B-2 are more than a year prior to the September 15, 2003 Consent

Order.  Exhibits B-3 and B-4 were after the Consent Order was signed by the court.

Similar statements concerning Mr. Borison's representation of the Debtor and the

circumstances surrounding the signing of the Consent Order by the Debtor are contained in an

affidavit filed *pro se* by the Debtor on May 3, 2004 (docket item 32).

On February 19, 2003, Mr. Greenfeld, the Trustee, made an application to employ Mr. Borison as special counsel to pursue avoidance of the Debtor's 2001 refinancing with KH. (Case docket item 465).  Paragraph 10 of that application states:

> That neither the firm of Legg Law Firm, LLC, nor any of its members have an interest adverse to the Trustee or to the Estate in the matters upon which he is to be engaged as attorney for the Trustee.  **He has consulted with debtor in this proceeding**.  It is the Trustee's belief that the employment of Legg Law Firm, LLC, would be in the best interest of this Estate. (emphasis added).

Mr. Borison's affidavit attached to the application refers to the application and adds no further information.  Mr. Borison's employment was approved on February 25, 2003 (case docket Item 468).  The certificate on the order shows that a copy was sent to the Debtor.

The Debtor's pleadings acknowledge that he knew Mr. Borison was representing the Trustee but they allege that Mr. Borison was also representing the Debtor.  In the latter regard, the Debtor asserts that Mr. Borison should have consulted the Debtor while negotiating the Consent Order, that Mr. Borison should have negotiated more favorable terms for the Debtor and for those reasons, the court should set aside the Consent Order.  Contrary to the Debtor's assertions, Mr. Borison got him something in the Consent Order that the Debtor did not have before; namely the right to refinance The Properties.  True, it was a limited right, but it was a right which the Debtor did not have before that the Consent Order was negotiated.  The court finds that Mr. Borison's relationships with the Debtor form **no** basis for setting aside the Consent Order.

In "Count III - KH Breached Order - Construed as Later or Extended" the Debtor again argues that the 60 day Forbearance Period should run from the signing of the order by the court on October 9, 2003.  As previously noted, this construction is contrary to the plain reading of the

Consent Order and this construction will not be adopted by the court.  The Debtor also argues that the order should be construed against KH because its attorney drafted the order.  Mr. Morrison does not cite any authority for that proposition.  That rule of construction applies to contract law, but the court has never seen it applied to court orders.  If it does apply to court orders, it would apply only when the order is vague.  Here the order is very clear.

The Debtor adopts his construction of the Consent Order and then asserts KH repudiated the order by not allowing the discount.  The refusal to honor a discount after the Forbearance Period expired is not a repudiation of the order.  The Debtor asserts he should be given a reasonable extension of time for his good faith efforts.  Although the Debtor signed the Consent Order, and thus was aware of its terms, in mid-September, his "good faith efforts" did not occur until November and December after the expiration of the Forbearance Period.  A number of Exhibits attached to the Opposition describe efforts to refinance but all of them were after the expiration of the Forbearance Period and none of them disclosed the full terms of the refinancing as required by the Consent Order.  The Debtor also asserts that the Consent Order is impermissibly vague.  The court disagrees.

As to "Counts IV, V, and VI - Chapter 13 Debtor May Use Trustee Avoiding Power," there is dispute among the Bankruptcy courts as to whether a Chapter 13 debtor may exercise a trustee's avoiding powers.  However, it is not necessary for that matter to be addressed here.  A trustee's avoiding powers can only be exercised with relation to property of the particular Bankruptcy estate.  The Properties are part of the Chapter 7 estate and are not part of the Chapter 13 estate.  Thus if the Debtor has any avoiding powers in his Chapter 13 estate, they cannot be exercised here.

-20-

<u>Conclusion</u>

The court finds that there is no genuine issue of any material fact and that KH is entitled to judgment as a matter of law.  Therefore, the court grants KH's motion for summary judgment. Since the granting of the motion for summary judgment disposes of this adversary proceeding, all other pending motions will be denied as moot.

An appropriate order shall be entered.

cc:    Martin Baltrotsky
       5100 Bradley Blvd.
       Bethesda, MD 20814

       Roger A. Morrison
       Morrison and Associates
       5605 Bradley Blvd
       Bethesda, MD 20814

       David Lee Tayman
       Gordon, Feinblatt, et al.
       233 E. Redwood St., Garrett Bldg.
       Baltimore, MD 21202

       Scott C. Borison
       5500 Buckeystown Pike
       Frederick, MD 21703

       Steven H. Greenfeld
       Gins & Greenfeld
       5028 Wisconsin Avenue NW, Suite 300
       Washington, DC 20016

**End of Memorandum Decision**

**SO ORDERED**

**Dated October 09, 2003**



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| MARTIN BALTROTSKY, | * | Case No. 98-2-0642-PM |
| Debtor. | * | (Chapter 7) |

\* \* \* \* \* \* \* \* \* \* \* \* \*  \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| STEVEN H. GREENFELD, Trustee, | * | |
| Plaintiff, | * | Adversary No. 03-03002-PM |
| v. | * | |
| KH FUNDING, INC., | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### STIPULATION AND CONSENT ORDER (i) COMPROMISING AND SETTLING ALL DISPUTES AT ISSUE IN ADVERSARY PROCEEDING; AND (ii) GRANTING RELIEF FROM THE AUTOMATIC STAY

Steven H. Greenfeld, Chapter 7 trustee (the "Trustee") for the estate of

Martin Baltrotsky (the "Debtor"), and KH Funding, Inc. ("KH Funding"), by their

respective undersigned counsel, hereby stipulate and agree as follows:

PLD1984 C611-01

1

## STIPULATION

1.      On August 11, 1998 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  By Order entered on or about July 26, 2002 (the "Conversion Date"), the Debtor's Chapter 11 case was converted to a case under Chapter 7 of the Bankruptcy Code.

2.      As of the Petition Date, the Debtor owned certain improved real properties, including, *inter alia*, properties located at 1801 Arcola Avenue in Silver Spring, Maryland (the "Arcola Property"), 5100 Bradley Boulevard in Bethesda, Maryland (the "Bradley Property"), and 9110 Georgia Avenue in Silver Spring, Maryland (the "Georgia Property").  The Arcola Property, Bradley Property and Georgia Property (collectively, the "Properties") are more particularly described in **Exhibit "A"**.

3.      On or about June 4, 2001, KH Funding made a loan to the Debtor in the principal amount of $650,000 (as subsequently modified and extended, the "Loan").  By virtue of the Loan, the Debtor refinanced certain of his indebtedness that was secured by the Properties.  The Loan is evidenced by, *inter alia*, a Note dated as of June 4, 2001 (the "Note").  By virtue of a certain Refinance Deed of Trust dated June 4, 2001 (the "Deed of Trust"), the Debtor granted KH Funding a first priority deed of trust lien on each of the Properties.  By virtue of a certain Modification Agreement dated as of December 18, 2001, the maturity date of the Note was extended to July 1, 2002.

4.      The Debtor has made no payments pursuant to the Loan since May 2002.  As of the date of this Stipulation and Consent Order, KH Funding asserts that its secured claim in connection with the Loan exceeds $800,000.

PLD1984-C611 01                                    2

5.     The Trustee commenced this proceeding on April 23, 2003, by filing the Complaint to Avoid Post-Petition Transfer (the "Complaint"), pursuant to which the Trustee asserts, *inter alia*, that (i) the Loan transaction should be avoided pursuant to 11 U.S.C. § 549 as an unauthorized post-petition transfer; and (ii) the Loan should be cancelled on grounds of certain alleged violations of the Truth in Lending Act and/or the Home Ownership Equity Protection Act.

6.     KH Funding filed an Answer on or about June 2, 2003, pursuant to which KH Funding denied that the Trustee is entitled to any of the relief requested in the Complaint and asserted certain affirmative defenses.

7.     The parties desire to settle all of their disputes in connection with the Loan and the Complaint pursuant to the terms set forth herein.

WHEREFORE, on the basis of the foregoing stipulations of fact and the agreement of the parties hereto, it is, by the United States Bankruptcy Court for the District of Maryland, hereby

ORDERED that, pursuant to the agreement of the parties, KH Funding's deed of trust lien on the Properties is valid and not subject to avoidance on any grounds, including, without limitation, the grounds raised in the Complaint, and the Loan (including all documents evidencing the Loan and all modifications thereto) is hereby approved, *nunc pro tunc* to the date of the Loan; and it is further

ORDERED that, subject to the provisions of this Stipulation and Consent Order, the automatic stay of 11 U.S.C. § 362(a) shall be, and hereby is, terminated to permit KH Funding to exercise its non-bankruptcy law rights and remedies with respect

PLD1984-C611-01                                                     3

to the Properties, including, without limitation, the right to sell the Properties at foreclosure; and it is further

ORDERED that, in the event that KH Funding sells the Properties at foreclosure, KH Funding shall remit first from the proceeds of such sales, the total amount of $25,000 to the Trustee, which sum shall be administered by the Trustee for the benefit of the Debtor's bankruptcy estate; and it is further

ORDERED that KH Funding shall forebear from exercising any of its non-bankruptcy law rights and remedies with respect to the Properties until the later of (i) the date on which the Court enters this Stipulation and Consent Order; or (ii) the sixtieth (60th) day following the date of this Stipulation and Consent Order (the "Forbearance Period"); and it is further

ORDERED that, during the Forbearance Period, the Debtor shall seek to obtain replacement financing with respect to the Properties sufficient to pay in full the indebtedness of KH Funding pursuant to the Loan. Provided that if the Debtor obtains replacement financing in an amount equal to or greater than $800,000 and that if such financing actually closes prior to the expiration of the Forbearance Period, KH Funding will stipulate and agree that its first priority deed of trust lien on the Properties shall be deemed fully and finally paid if (i) KH Funding is paid first from the proceeds of the refinancing the sum of $700,000; and (ii) KH Funding is granted a second priority deed of trust lien on the Properties, behind only the lien on the Properties held by the lender that extends such replacement financing, in the amount of $30,000; and it is further

ORDERED that, in the event that the Debtor obtains a commitment for replacement financing as described herein that is capable of closing within the

Forbearance Period, the Debtor shall disclose all of the material terms of such financing commitment to KH Funding, in writing to KH Funding's undersigned counsel at least two weeks prior to the closing date, and KH Funding shall have the right to extend replacement financing to the Debtor pursuant to the same or better terms, provided that KH Funding notifies the Trustee and the Debtor in writing, at least one week prior to the closing date, of its intention to extend such financing.

Dated:  September 15, 2003

/s/ Bradley J. Swallow
Bradley J. Swallow, Bar No. 11250
Gordon, Feinblatt, Rothman,
Hoffberger & Hollander, LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202-3332

Attorneys for KH Funding, Inc.


SEEN AND CONSENTED TO:


/s/ Martin Baltrotsky
Martin Baltrotsky, Debtor

/s/ Scott C. Borison
Scott C. Borison, Bar No. 22576
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, Maryland 21703

Attorneys for Steven H. Greenfeld,
Chapter 7 Trustee

## CERTIFICATE OF ORIGINAL SIGNATURES

I HEREBY CERTIFY that the terms of the foregoing Stipulation and

Consent Order (i) Compromising and Settling All Disputes At Issue In Adversary

Proceeding; and (ii) Granting Relief From The Automatic Stay are identical to those set

forth in the original Stipulation and Consent Order; and the signatures represented by the

"/s/" symbols on such copy reference the signatures of consenting parties on the original

Stipulation and Consent Order.


Dated:  September 15, 2003

/s/ Bradley J. Swallow
Bradley J. Swallow, Bar No. 11250
Gordon, Feinblatt, Rothman,
Hoffberger, & Hollander, LLC
233 East Redwood Street
Baltimore, Maryland 21202
(410) 576-4000

Attorneys for KH Funding, Inc.


cc:     Steven H. Greenfeld, Esquire
        Ginns & Greenfeld, PC
        5028 Wisconsin Avenue, N.W.
        Suite 300
        Washington D.C.  20016

        Bradley J. Swallow, Esquire
        Gordon, Feinblatt, Rothman,
        Hoffberger & Hollander, LLC
        233 East Redwood Street
        Baltimore, Maryland  21202-3332

        Scott C. Borison, Esquire
        Legg Law Firm, LLC
        5500 Buckeystown Pike
        Frederick, Maryland 21703


PLD1984-C611-01                      6

Sari K. Kurland, Esquire
The Law Offices of Sari K. Kurland, P.C.
5900 Edson Lane
Rockville, Maryland  20852

Martin Baltrotsky
5100 Bradley Boulevard
Bethesda, Maryland 20814

Julie Mack, Esquire
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770


**END OF ORDER**

20309    572

Property 1
Lot numbered Three (3) in Block lettered "A", in a subdivision known as "ARCOLA KNOLLS" as per plat recorded in Plat Book 68 at Plat 6353 among the Land Records of Montgomery County, Maryland.

Tax Account No. 13-502-952617
Property Address: 1801 Arcola Avenue, Silver Spring, Maryland 20902

Property 2 – Principal Residence
Lot numbered Thirteen (13), in Block numbered and lettered Three-A (3-A), in the subdivision known as "SECTION 2, BRADLEY HILLS," as per plat thereof recorded among the Land Records of Montgomery County, Maryland in Plat Book 11 at Plat 776. SAVING AND EXCEPTING all that part that was conveyed to the State of Maryland by Deed recorded in Liber 2803 at folio 120.

Tax Account No. 7-4-442073
Property Address: 5100 Bradley Boulevard, Bethesda, Maryland 20814

Property 3

Part of Lot numbered Five (5) in Block numbered Five (5) of Benjamin F. Leighton's Subdivision of part of a tract of land formerly known as and called "Labyrinth" or by whatever name or names the same may have been known or called, but known as and called "WOODSIDE", as the same is laid down on the plat of said subdivision which is duly recorded among the Land Records of Montgomery County, Maryland, in Liber J.A. No. 15, at Plat 428, et seq., and being re-recorded in Plat Book A at Plat 25, said plat being superceded by Plat Book A at Plat 60, being more particularly described as follows:
        Beginning at a pipe set for the rear corner of Lots 5 and 6, Block 5, thence running with rear or west line of Lot 5, Block 5
        South 40°00'00" East, 75.00 feet to a pipe set, said pipe being at common corner of Lots 4 and 5, Block 5, thence running with dividing line of Lots 4 and 5, Block 5
        North 50°00'00" East, 188.63 feet to a pipe set on the west right of way line of Georgia Avenue, as now exists, S.R.C. Plat No. 8906, thence with west line of Georgia Avenue
        North 40°22'55" West, 75.00 feet to a pipe set, said pipe being on the west line of Georgia Avenue right of way as now exists, also being on dividing line between Lots 5 and 6, Block 5, Woodside, thence leaving line of Georgia Avenue and running with dividing line of Lots 5 and 6, Block 5
        South 50°00'00" West, 188.13 feet to the point of beginning, containing a computed area of 14,129 square feet of land.

Tax Account No. 13-27-1584710
Property address: 9110 Georgia Avenue, Silver Spring, Maryland 20910



EXHIBIT

A